Hall, Judge.—
It is said in this case, in argument for the defendant, that before the revolution it was the practice of the courts of equity, upon granting injunctions after verdict, to direct bond with security to be taken, for the amount of the sum for which the injunction was granted; and this practice was substituted in the room of the practice in England, which in such cases directed the money to be paid into court. The act of 1782, ch. 11, declares, that the courts of equity in this state shall possess all the powers and authorities that the court of chancery, which was formerly held in this state under the late government, exercised;—so that if such was the practice before the revolution, it was the practice at the time when the injunction in question was granted; and the property seized by the defendant, as sheriff, and restored to Walke by him upon being served with the injunction, flood in *171 the same situation, as if the money for which the injunction was granted had been directed to be paid into court. If the money which the plaintiff claimed, had been really paid into court, I see no good reason why the property levied upon might not have been restored. The belief that the practice of taking bond, &c. as before spoken of, did exist before the revolution, derives some of its support from the circumstance that money at that time, in this country, was not so easily procured as in England, and of course directions to make deposits in court, could not be so easily complied with and also from the circumstance that such a practice has prevailed for some years at least since the revolution—and, sheriffs, as far as I have observed, have conformed themselves to such a practice. If there had been a direction to stay the property levied upon in the hands of the sheriff, perhaps the case might have been different—it is not reduced to a certainty what the practice in such cases was before the revolution. I am glad, however, that this case can be decided on another ground. It is not pretended in this case that the defendant, in any respect, acted a fraudulent part; he acted as every sheriff acted in, a similar situation for a considerable time past. The case has been fairly examined by a jury, who have found a verdict for the defendant—it is a hard action.—For these reasons I am not for granting a new trial.
Johnston, Judge.—
In the case, Tagert vs. Hill, although in England, agreeable to practice in that country, the sheriff is bound to keep possession of the goods, and may even proceed to sale; which I suppose, in case the goods are of a perishable nature, is the usual practice. It is *172 true, there is no positive law in this country to justify the sheriff in deviating from the practice in England : But the constant practice in this country, as far as I know, has been, that the sheriff, on being served with an injunction, has in all cases delivered up the goods to the defendant; and no one instance occurring to me that an action has been brought against a sheriff for so doing, though cases where the plaintiff may have suffered a loss, as in the present case, must necessarily have taken place, it is not a matter of surprize that the sheriff should think himself justified in acting as all others heretofore have done in like cases.
In England there is no positive law in this case more than in this country—it depends on the practice of the courts, sanctioned by judicial de-cisions; and the only difference is, that in this country, though the practice in this country has been uniformly different, it has passed sub silentio, and not sanctioned by a decision of the courts. If this will not justify the sheriff who acts agreeable to this practice, bona fide, without fraud, collusion or corruption, it will go great lengths to excuse, and had, no doubt, great weight with the jury who found in his favour—and this appears to be a hard action, and not to be maintained but upon principles stricti juris, on a practice not hitherto in use in this country. I am not disposed to disturb the security which the defendant has in a verdict; therefore I am of opinion that no new trial should be granted.
Macay, Judge.—
What was the practice of the sheriffs in the courts of chancery, under the former government, I know not, nor have I had *173 it in my power to get any information, except from those gentlemen who had practiced in them —the sheriff’s returns being “ stayed by injunction.” It seems that on obtaining an injunction, the complainant always filed his bond in the office ; this bond was for costs: but whether the sheriff restored the goods he had levied on, up-on being served with the injunction, I cannot say. I have been informed it was; and therefore the practice began with the sheriffs, under the present court of equity, to restore the property levied on, when served with an injunction. If any such practice has ever prevailed, I do not remember it. It could not have been general, or some case must have come within my observation. There can be no doubt that, under the laws of England, the sheriff might, after he had levied, sell the goods, notwithstanding an injunction had issued and been served upon him—he could not restore the goods without making himself liable for their value. The judges who tried this cause, were divided in their opinions. Judge Moore held that the sheriff, by restoring the goods he had levied on, made himself liable to the plaintiff for their value. Judge Haywood held that the sheriff had done nothing more than what was justifiable, under the practice of the former court of chancery, as well as the present court of equity. The jury had the whole matter before them, and found for the defendant. Either the plaintiff or the defendant must lose the value of the goods levied on, Green being insolvent. The practice being very doubtful, and this being a case stricti juris, I will not deprive the defendant of the benefit of the verdict in his favour.